

# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| MARY R. MURDOCK-RIDGWAY | § | |
| | § | |
| V. | § | CASE NO. 4:05cv135 |
| | § | (Judge Brown/Judge Bush) |
| Commissioner of Social | § | |
| Security Administration | § | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be affirmed.

## HISTORY OF THE CASE

Plaintiff originally filed applications for DIB and SSI benefits on January 24, 2002 claiming disability since October 29, 2001. The applications were denied initially and upon reconsideration. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). After holding a hearing on January 20, 2004, the ALJ issued an unfavorable decision on March 18, 2004. The Plaintiff subsequently requested that the Appeals Council conduct a review. The Appeals Council denied Plaintiff's request on February 4, 2005. Therefore, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After considering the record, the ALJ made the prescribed sequential evaluation.

The ALJ made the following findings:

1.    The claimant met the special earnings requirements of the Act on October 19, 2001, her alleged disability onset date, and she continues to meet them through December 31, 2006.

2.    The claimant has not engaged in substantial gainful activity since October 29, 2001.

3.    The medical evidence establishes that the claimant is status post right humeral fracture, status post right rotator cuff repair, and that she has a history of mononucleosis, non-insulin-dependent diabetes, a thyroid condition, and chronic fatigue syndrome, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4.    The claimant has alleged pain and that he cannot work because of symptomatology.  The credible evidence, however, does not show a medical condition so severe as to be productive of symptoms that would preclude a restricted range of light work and the full/wide range of sedentary work, and the claimant's testimony and other avenues of pain consideration as evaluated under 20 C.F.R. §§ 404.1529 and 416.929 and SSR 96-7p are found not credible in supporting work activity limitations to the extent contended.

5.    The claimant has the ability to occasionally lift up to 20 pounds with frequent lifting of 10 pounds, sit for six hours in an 8 hour work day at 2 hour intervals, stand and/or walk for 6 hours in an 8 hour work day at 2 hour intervals but with only occasional reaching overhead with the right upper extremity.

6.    The claimant is unable to perform her past relevant work as licensed vocational nurse.

7.    The claimant has the residual functional capacity for a restricted range of light work and the full/wide range of sedentary work.

2

8.      The claimant is currently 52 years of age, which is defined as closely approaching advanced age.

9.      The claimant has a 12th grade education.

10.     The claimant acquired work skills which are transferable to semi-skilled work functions of other work.  Such work skills include knowledge of medical terminology, use of various medications, use of medical equipment, record keeping skills and use of various office machines.

11.     If the claimant had the capacity to perform the full range of light work, Section 404.1569 of Regulation No. 4, and Section 416.969 of Regulation No. 16, and Rule 202.15, Table 2, Table 1, Subpart P, Regulation No. 4 would direct a conclusion that she is not disabled.

12.     Although the claimant's limitations do not allow her to perform the full range of light work, there are a significant number of jobs in the national economy which she can perform.  Therefore, considering the claimant's residual functional capacity, age, education, and work experience and using the above-cited rule as a *framework* for decision-making, she is capable of making successful vocation adjustment [sic] to work that exists in significant numbers in the national economy.

13.     The claimant was not under a "disability" as defined in the Social Security Act, at any time from October 29, 2001, her alleged onset date, through the date of this decision.

(TR 25-26).

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings, *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1983), and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir. 1981); *see* 42 U.S.C. §

3

405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).  This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, *Chaney v. Califano*, 588 F.2d 958, 959, (5th Cir. 1979), and conflicts in the evidence are resolved by the Commissioner.  *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

To establish disability, Plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months.  Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.  42 U.S.C. § 1382(a)(3).

### SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability.  20 C.F.R. § 404.1520 (1987).  First, a claimant who at the time of his disability claim is engaged in substantial gainful employment is not disabled.  20 C.F.R. § 404.1520(b) (1987).  Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience.  20 C.F.R. § 404.1520(c) (1987).  Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1987).  20 C.F.R. § 404.1520(d) (1987).  Fourth, a

4

claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work.  20 C.F.R. § 404.1520(e) (1987).  Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy.  20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).

## ANALYSIS

Plaintiff raises the following issue on appeal: whether the ALJ applied the proper legal standards to weigh the medical opinions of Gerald H. Stephenson, Ph.D. and Glen E. McClure, Ph.D. regarding the severity of Plaintiff's mental impairments.

Plaintiff's first allegation of error is that the ALJ should have considered her depression to be a severe impairment.[1]  After reviewing the voluminous record, the Commissioner observed that there was little evidence of record concerning Plaintiff's depression, and aside from Dr. Stephenson one-time report in March 2003, the medical evidence and Plaintiff's own testimony demonstrate that her depression has not resulted in significant limitations affecting her ability to perform work activities.

An impairment is considered not severe if it is a "slight abnormality" having only a minimal effect upon the claimant's ability to work.  *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985); *see also Loza v. Apfel*, 219 F.3d 378, 390-391 (5th Cir. 2000) (affirming the standard from *Stone*).  At the second step of the five-step sequential evaluation process, a "claimant is automatically denied benefits if the

---

[1]When a claimant has multiple impairments, the Act requires the Commissioner to consider the combined effects of all such impairments. *Sullivan v. Zebley*, 493 U.S. 521, 536 (1990).  No complaint is made that the ALJ failed to do so here.

asserted impairment is not severe, without consideration of his age, education, or work experience." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). Plaintiff, citing *Loza,* contends that the ALJ did not follow the *Stone* standard. However, the ALJ correctly acknowledges the *Stone* standard. Although Plaintiff claims that the ALJ did not properly consider her functional limitations and restrictions caused by her depression, the ALJ did so. The ALJ notes Plaintiff's prior consultation with Dr. Patel. He cites to Stephenson's findings, including a GAF score of 60.

Plaintiff's second allegation of error is that the ALJ did not properly consider and reject the opinion of Dr. Stephenson. The regulations explain that when there are conflicting medical reports, such as the case before this court, the Commissioner "will weigh all of the evidence and see whether [h]e can decide whether [the claimant] is disabled based on the evidence we have." *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In evaluating the evidence, every medical opinion will be evaluated. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Again, there is no requirement that every evaluation of every opinion be memorialized, only that the ALJ will "consider" numerous factors, such as the relationship of the physician to the claimant, whether the opinion is supportable, the opinion's consistency with other evidence, any specialization the doctor may have, and "other factors." *Id.*

When an ALJ considers a treating source's opinion but does not give it controlling weight, the regulations specifically direct that an ALJ will "give good reasons in [his] . . . decision for the weight [h]e give[s] [a] treating source's opinion." *See* C.F.R. §§ 404.1527(d), 416.927(d). The ALJ is directly ordered to "explain in

6

the decision the weight given to the opinions" of State agency physicians. *See* C.F.R. §§ 404.1527(f)(ii), 416.927(f)(ii).

Ruling 96-5p explains that 404.1527 and 416.927 "provide general guidance for evaluating all evidence in a case record and provide detailed rules for evaluating medical opinion evidence." The Ruling also explains that "adjudicators must always carefully consider medical source opinions about any issue. . ." SSR 96-5p at *2. When weighing the various medical source statements, the ALJ is not required to discuss every factor considered, but need only provide "appropriate explanations for accepting or rejecting such opinions." *Id.* at *3. The opinions of both Drs. McClure and Stephenson were "considered" by the ALJ, and the ALJ discussed each physician's opinion in the decision. The Fifth Circuit has held that:

> [T]he ALJ has sole responsibility for determining a claimant's disability status." [*Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)]. "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Id. The treating physician's opinions are not conclusive. *See Brown [v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999)]. The opinions may be assigned little or no weight when good cause is shown. *Greenspan*, 38 F.3d at 237. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See, e.g., Brown*, 192 F.3d at 500; *Greenspan*, 38 F.3d at 237; *Paul*, 29 F.3d at 211.

*Newton v. Apfel*, 209 F.3d 448, 455-456 (5th Cir. 2000). The Fifth Circuit permits an ALJ to accord less weight to a treating physician's opinion when other physician reports demonstrate a different result. Here, the ALJ gave greater weight to McClure's testimony. Contrary to Plaintiff's assertions, Stephenson's report contains a number of references to Plaintiff's condition which lend support to the ALJ's analysis:

"Thinking logical and coherent;" "not delusional;" "no evidence of hallucinations;" "average range of general mental ability;" "prognosis fair with proper treatment."  The ALJ also relied on and cited the state agency's examination which essentially found no significant limitations.  Plaintiff cites the Court to its decision in *Essex v. Commissioner of Social Security*, No. 4:04cv393.  However, Stephenson performed a one-time assessment, as did the state.  Three specialists from the same field have given opinions.  The ALJ has considered all three but given more weight to psychologists other than Stephenson.

At the one-time examination in March 2003, Dr. Stephenson generally observed that Plaintiff "complained of general malaise for some years without satisfactory treatment."  Her depression should not be considered part of this uncontrollable malaise, as she reported at the hearing that her depression was successfully treated.  Dr. Stephenson generally observed Plaintiff to be cooperative, alert, and easily understood.  While complaining of daily depression, Plaintiff also stated that she was "friendly and outgoing and reports good relationships across the board."  She demonstrated an ability to focus attention, follow instructions, complete assigned tasks, and while demonstrating some interruptions, Plaintiff reported no episodes of decompensation.  Dr. Stephenson observed that Plaintiff's mental status examination revealed her to be generally logical and coherent with some irrational tendencies.  She exhibited no delusional thoughts, nor was there any evidence of hallucinations or illusions, and her mood appeared euthymic (normal) with appropriate affect.  She functioned cognitively in the average range, and testing revealed her to exhibit an

average range of mental ability.  Dr. Stephenson opined that Plaintiff had only poor to

fair abilities to make vocational adjustments and making person-social adjustments.

Based on his examination, Dr. Stephenson diagnosed Plaintiff with a bipolar II

disorder with depression and hypomania.  He also observed that Plaintiff experienced

stress factors due to her lack of employment, lack of income, and a domestic conflict,

none of which are representative of a mental disorder, but of her situation.  Situational

depression does not fall within the ambit of a mental impairment contemplated as a

basis for disability.  *See Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987)

(claimant's reports of emotional distress and depression at being unable to work do not

meet the claimant's burden in proving a non-exertional mental impairment); *see also*

*Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) ("Mere sensitivity about loss

of ability to perform certain chores, however, does not even approach the level of a

mental or emotional impairment as defined by SSA regulations.").  Dr. Stephenson also

assigned Plaintiff a GAF of 60,[2] which demonstrates a moderate difficulty in social

occupational functioning.[3]

Dr. Stephenson's March 2003 report is not supported by the other evidence of

record, namely Plaintiff's own testimony that her depression was not limiting.  As

---

[2]  GAF is a standard measurement of an individual's overall functioning
level with respect only to psychological, social, and occupational functioning.
*Ray v. Barnhart*, 163 Fed. App'x 308 (5th Cir. 2006).

[3]  The GAF is a numerical score from 0 to 100 that considers the
"psychological, social, and occupational functioning on a hypothetical continuum
of mental health-illness."  A GAF of 51-60 represents an overall level of
functioning in which there are "moderate symptoms . . . or moderate difficulty
in social, occupational, or school functioning." *See Diagnostic and Statistical*
*Manual of Mental Disorders IV-TR* (*DSM-IV-TR*), p. 34 (4th ed. 2000).

presented below, given that other medical evidence and other evidence of record contradicts Dr. Stephenson's assessment, it was not reversible error for the ALJ to reject his opinion that Plaintiff experienced significant limitations.

While Dr. Stephenson was merely a one-time consultative physician, Plaintiff's treating physician, Jyoti Patel, M.D., did not consider her depression very limiting.  In Dr. Patel's May 2002 notes, Plaintiff was assessed with depression secondary to her chronic pain syndrome, which was related to her chronic fatigue syndrome and injury to her right shoulder and neck.  Much of Plaintiff's depression and poor mood appeared related to her chronic fatigue and the residuals of her injuries, rather than an impairment due to a mental disorder.  She reported that she liked to sew, attend church, watch movies, and keep up-to-date on current events.  With a change in medication, by January 2003 Plaintiff reported fewer mood swings and that she had a good Christmas.  Plaintiff exhibited "no symptoms" of depression, mania, irritability, or agitation.  By April 2003 her condition was stable and her mood euthymic (normal), as she reported that the increase in the Effexor "helped," and she was moving into a larger home.  Her depression was considered to be only "moderate," and she continued to exhibit "no symptoms" of mania, irritability, or agitation.  Medical impairments that reasonably can be remedied or controlled by medication or treatment are not disabling.

In October 2003, Plaintiff presented to the Texas Cancer Center and she reported "no complaints of mood swinging or depression, and [was] sleeping well at night."  In December 2003, a Functional Capacity Test noted no mental limitations.

These other medical reports support the ALJ's decision to reject Dr. Stephenson's opinion of mental limitations.

Aside from the medical reports that demonstrate Plaintiff's depression was not limiting, Plaintiff's own testimony at the hearing rebuts her claim. When asked how well Plaintiff's depression was being treated, Plaintiff stated "It's very well treated," adding that she only experiences depression once a month. When asked if she experienced any problems with her antidepressant treatment of Effexor, Plaintiff replied "no." Dr. McClure testified that Plaintiff's depression was merely "mild" and well-controlled with medication, and she did not exhibit a severe mental impairment as defined in the regulations. Because the ALJ considered Dr. McClure's opinion well-supported by the evidence, he gave great weight to the opinion.

The June 2002 assessment by State Agency Medical Consultant, A. Boulos, M.D., also supports the ALJ's assessment that Plaintiff's depression did not result in severe limitations. While Plaintiff was considered to experience depression, it resulted in only mild restrictions in her daily activities; mild difficulties in Plaintiff's social functioning; mild difficulties in her maintaining her concentration, persistence or pace; and no episodes of decompensation. Dr. Boulos further opined that Plaintiff retained the ability to perform detailed tasks, to interact with coworkers and supervisors, and to adapt to changes in the workplace. In August 2002, Robert White, Ph.D., reviewed Dr. Boulos' conclusions and agreed. The ALJ specifically found that, because Dr. Boulos' opinion was supported by the case record, his opinion was entitled to great weight. Plaintiff's argument before this Court is that the ALJ's decision was lacking,

11

and that the matter should be remanded to have the evidence reweighed. This Court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). The present case provides a good example for application of the Fifth Circuit rule that the "major policy underlying the harmless error is to preserve judgments and avoid waste of time." *Id.*

"The mere presence of some impairment is not disabling *per se*. Plaintiff must show that she was so functionally impaired by her [impairment] that she was precluded from engaging in any substantial gainful activity." *Hames v. Heckler*, 707 F.2d 162,165 (5th Cir. 1983). Because more than a scintilla of evidence supports the holding that Plaintiff's impairments would not prevent her from working, the ALJ's decision of not disabled should be affirmed. The Court must give considerable deference to the ALJ's finding of fact, as this Court cannot reweigh the evidence and place itself in the "fact-finding business." *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Here, the Plaintiff received a full and fair hearing and the ALJ's decision was appropriate and guided by the regulations and the law of this Circuit.

## RECOMMENDATION

Pursuant to the foregoing, it is RECOMMENDED that the decision of the Administrative Law Judge should be AFFIRMED.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days shall bar an aggrieved party from attacking the factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 106 (1985); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) *en banc*.

12

**SIGNED this 1st day of June, 2006.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE